STURSBERG, SCHELL & CO. *v.* UNITED STATES (No. 889).[1]

VEGETABLE PARCHMENT PAPER WITH COTTON MESH BACK.

The importation is known as parchment cloth; it is made of parchment paper and cotton cloth, the parchment paper being the component of chief value. Its use does not appear by proof, but its apparent characteristics indicate an article differing from either paper or cotton cloth taken alone, and with distinguishing characteristics of its own. It was properly classified by the collector as a manufacture of parchment paper and cotton cloth, dutiable under paragraph 411, tariff act of 1909.— Knauth, Nachod & Kuhne (T. D. 24912).

United States Court of Customs Appeals, November 14, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27801 (T. D. 32297).
[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case was imported under the tariff act of 1909, and is described in the report of the appraiser as "so-called parchment cloth made of vegetable parchment paper backed with cotton mesh, parchment paper being the component part of chief value."

The collector classified the importation as a manufacture of parchment paper and cotton, parchment paper being of chief value, and the same was accordingly assessed with duty at 5 cents per pound and 30 per cent ad valorem under the provisions of paragraph 411 of the act.

The importers filed their protest against this assessment, claiming the article to be dutiable at either 30 per cent or 35 per cent ad valorem under the several provisions of paragraph 415 of the act, or alternatively at 5 cents per pound, or at 5 cents per pound and 20 per cent ad valorem, or at 4½ cents per pound, or at 2 cents per pound and 10 per cent ad valorem, under the provisons of paragraph 411 of the act. Other alternative claims are included within the protest which do not seem to require specific mention.

---

[1] Reported in T. D. 32963 (23 Treas. Dec., 417).

The protest was heard by the Board of General Appraisers and was overruled, from which decision the importers now appeal.

The following is a copy of paragraphs 411 and 415 of the act of 1909:

411. Papers with coated surface or surfaces, not specially provided for in this section, five cents per pound; if wholly or partly covered with metal or its solutions (except as hereinafter provided), or with gelatin or flock, or if embossed or printed, five cents per pound and twenty per centum ad valorem; papers, including wrapping paper, with the surface decorated or covered with a design, fancy effect, pattern or character, whether produced in the pulp or otherwise, but not by lithographic process, four and one-half cents per pound; if embossed, or wholly or partly covered with metal or its solutions, or with gelatin or flock, five cents per pound and twenty per centum ad valorem: *Provided,* That paper wholly or partly covered with metal or its solutions, and weighing less than fifteen pounds per ream of four hundred and eighty sheets, on a basis of twenty by twenty-five inches, shall pay a duty of five cents per pound and twenty-five per centum ad valorem; parchment papers, and grease-proof and imitation parchment papers which have been supercalendered and rendered transparent, or partially so, by whatever name known, two cents per pound and ten per centum ad valorem; all other grease-proof and imitation parchment papers, not specially provided for in this section, by whatever name known, two cents per pound and ten per centum ad valorem; bags, envelopes, printed matter other than lithographic, and all other articles composed wholly or in chief value of any of the foregoing papers, not specially provided for in this section, and all boxes of paper or wood covered with any of the foregoing paper, five cents a pound and thirty per centum ad valorem; albumenized or sensitized paper or paper otherwise surface coated for photographic purposes, thirty per centum ad valorem; plain basic papers for albumenizing, sensitizing, baryta coating, or for photographic or solar printing processes, three cents per pound and ten per centum ad valorem.

415. Jacquard designs on ruled paper, or cut on Jacquard cards, and parts of such designs, cardboard and bristol board, thirty-five per centum ad valorem; press boards or press paper, valued at ten cents per pound or over, thirty-five per centum ad valorem; paper hangings with paper back or composed wholly or in chief value of paper, twenty-five per centum ad valorem; wrapping paper not specially provided for in this section, thirty-five per centum ad valorem; paper not specially provided for in this section, thirty per centum ad valorem: *Provided,* That paper embossed, or cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes, plain or printed but not lithographed, and not specially provided for in this section, shall be dutiable at thirty-five per centum ad valorem; articles composed wholly or in chief value of paper printed by the photogelatin process and not specially provided for in this Act, three cents per pound and twenty-five per centum ad valorem.

The protest filed herein does not specifically name the several classifications for which the importers contend, but merely states the competing rates of assessment which are claimed by them. Applying these claims, however, to the foregoing paragraphs, it appears that the importers alternatively contend that the importation is dutiable under paragraph 415 as wrapping paper, or as paper not specially provided for, or is dutiable under paragraph 411, as paper with a coated surface, or as wrapping paper with a decorated surface, or as parchment paper, or grease-proof or imitation parchment paper, by whatever name known.

On its part the Government contends, in support of the collector's classification and assessment, that the importation is not distinctively a paper of any kind, but is a manufacture of parchment paper and

cotton cloth, falling within that classification of paragraph 411 which provides for "all other articles composed wholly or in chief value of any of the foregoing papers, not specially provided for."

No evidence was submitted at the trial before the board; therefore, so far as the facts are concerned, the case stands upon the findings of the appraiser and the sample of the merchandise which is forwarded with the files.

The appraiser states that the imported article is called parchment cloth, that it is made of vegetable parchment paper backed with cotton mesh, and that the parchment paper is the component part of chief value. These statements of fact are sustained by an examination of the official sample, and, as already stated, are wholly uncontradicted by any other evidence in the case. They must therefore be accepted as correct, and they furnish the facts upon which the decision of this appeal must necessarily be predicated.

Upon that authority, therefore, it must be accepted as true that the imported article is composed of two materials, namely, parchment paper and cotton cloth, and that it is called parchment cloth. These facts, and the appearance of the exhibit, lead to the conclusion that the article itself is no longer either parchment paper or cotton cloth, which has simply been improved "without interfering with its distinguishing characteristics," but rather that the imported article is a new entity into which the component materials have merged. In this view the resultant article is not simply improved paper, nor improved cotton cloth, but is a manufacture composed of paper and cloth, being a new article with distinguishing characteristics of its own. There is nothing in the record to sustain the claim that the imported article is used or known as a wrapping paper, or that it comes properly within any of the other descriptions set out in the protest. This view sustains the assessment of the article as a manufacture composed of parchment paper and cotton cloth, and brings it within the provision contended for by the Government.

There are several reported decisions of the Board of General Appraisers which may not seem to be consistent with the conclusion just expressed, but upon examination they are found to rest upon facts such as do not appear in the present case.

In the case of George Goodsir, jr., Abstract 21388 (T. D. 29834), certain cloth-lined paper used for making envelopes was classified by the Board of General Appraisers as paper not specially provided for, rather than a manufacture of cotton. The decision, however, was placed upon the ground that the article in question was known and dealt in commercially as paper, that fact being established by testimony in the case.

In the case of R. F. Downing & Co., Abstract 25520 (T. D. 31568), the merchandise is described as oiled paper with a cotton back, used as wrapping paper. The Board of General Appraisers classified the article as wrapping paper, rather than a manufacture of greaseproof paper. The decision was based upon testimony submitted in

the case which convinced the board that the article was simply improved wrapping paper, and was entitled to come within that specific classification as contained in the act.

On the other hand, in the case of Knauth, Nachod & Kuhne (T. D. 24912) (1904), the article involved is described as parchment paper with a cotton-cloth back, imported for use in the manufacture of worsted yarns, covering the rolls between which the yarn is made to pass in the process of spinning. The article was invoiced as "brown parchment cloth." The Board of General Appraisers held the article to be a manufacture of paper rather than a parchment paper, upon the ground that the article was commercially known as parchment cloth. This decision was cited in Notes on Tariff Revision, 546, and the article was therein named as one which had received classification as a manufacture of paper rather than a kind or condition of paper.

In the present case, as in the one last cited, the importation is known as parchment cloth; it is made of parchment paper and cotton cloth; its use does not appear by proof, but its apparent characteristics indicate an article different from either parchment paper or cotton cloth taken alone; it was classified by the collector as a manufacture of parchment paper and cotton cloth. This conclusion of the collector does not seem to be inconsistent with the premises, and the court therefore holds that the decision of the board sustaining the collector should be, and it is, *affirmed*.